IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.  Case Nos.:   4:09cr70/RH/CAS
 4:12cv269/RH/CAS

ERIC JEROME REESE, JR.

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 64).  The Government filed a response (doc. 69) and Defendant filed a reply (doc. 71).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

Defendant Eric Jerome Reese was charged in a four count indictment with two counts of possession of a firearm by a convicted felon, one count of knowing possession of stolen firearms, and one count of possession of a firearm with an obliterated serial number (doc. 1).  He pleaded guilty pursuant to a written plea

agreement and a twelve-page written statement of facts (docs. 17, 18). According to the statement of facts, the charges in Count One stemmed from a December 6, 2008, incident in which Defendant fired a weapon into the air from a vehicle in which he was a passenger (doc. 17 at 5–6, 11). The remaining three charges came about after law enforcement responded to a 911 call from one of Defendant's neighbors on December 23, 2008. The neighbor reported that Defendant had threatened to kill the mother of his child while holding a firearm to her head, and had later threatened her with a knife. Law enforcement responded, and, after barricading himself in his apartment for a short time, Defendant surrendered. During a protective sweep, law enforcement officers observed a handgun and ammunition. After obtaining a search warrant, officers located multiple weapons and ammunition, several of which were identified as having been stolen less than one month earlier from the home of an individual by the name of Amir Cyrus.[1] Investigators made contact with Defendant's next door neighbor, Patrick Graham, after learning that Defendant might have provided Graham with weapons and recovered a Century Arms AK-47 that had also been stolen from the Cyrus residence. Graham explained to law enforcement that approximately two weeks earlier Defendant had asked Graham to "hold" the AK-47 for Defendant temporarily while he had guests. Graham admitted that he agreed to hold the stolen weapon, but he denied involvement in the original theft of the Century Arms or any of the other weapons. Graham later

---

[1] Although Cyrus did not know Defendant by name, he apparently had identified Defendant as a possible suspect in the theft.

changed his story and told law enforcement that it was an individual by the name of Mario Davis who had asked him to keep the stolen AK-47 (*id.* at 11–12).

At the plea proceeding, Defendant admitted under oath that he had read the statement of facts line-by-line and word-by-word before he signed it and he stated that although there were parts of the statement of facts that he disagreed with, "pretty much everything [in it was] true" (doc. 26 at 9–10).  In response to specific questioning from the court, Defendant admitted that he was guilty of having firearms at his house but stated that he did not steal any firearms (*id.* at 10).  He explained that he felt like he was trying to do a good deed by returning the firearms to the person from whom they had been stolen (*id.* at 10–11).  Defendant said that he knew the guns were stolen because a next door neighbor had told him that, but he denied knowing whether the serial numbers had been removed from the weapons. Defendant claimed that he intended to return the guns to the person from whom they were stolen and that he made "over 12 or 13 attempts" to get in touch with the owner of the guns to let him know what was going on (*id.* at 11).[2]  The Government clarified that the firearm that was the subject of Count One was not alleged to have been stolen, but that the firearms discovered in Defendant's apartment on December 23, 2008, which were the subject of Counts Two through Four of the indictment, had been stolen (*id.* at 14).   The district court did not request any further acknowledgment from Defendant regarding the specifics of the offense conduct, and accepted his guilty plea at the close of the proceeding.

---

[2]Defendant also admitted that he previously had been making arrangements to sell weapons to a confidential informant, but this was in May of 2008, well before the conduct charged in the indictment  (*id.* at 11–12).

The Presentence Investigation Report ("PSR") was disclosed to the defense on February 25, 2010 (*see* docs. 21, 42, 60). The substantive counts were grouped for purposes of sentencing (doc. 42, PSR ¶ 44). Defendant's base offense level was 22 because the offense conduct involved a semiautomatic firearm capable of accepting a large capacity magazine (PSR ¶ 45). He received a two level adjustment due to the quantity of firearms involved in the offense, a four level adjustment because one of the firearms had an obliterated serial number, and a four level adjustment because the firearms were possessed in connection with another felony offense (PSR ¶¶ 46, 48, 52). Defendant's total offense level was 32, and he had a criminal history category of III (*see* PSR ¶¶ 58, 67). The applicable guidelines range was 151 to 188 months. Although the statutory maximum term of imprisonment for each count was ten years, the PSR noted the court's discretion to impose consecutive sentences to achieve a sentence within the guidelines range (PSR ¶¶ 92, 93).

Defendant's original attorney moved to withdraw due to irreconcilable differences. The court granted the motion on March 5, 2010, and appointed attorney Richard Greenberg to represent Defendant (doc. 23). Sentencing was continued and Mr. Greenberg had the benefit of the rearraignment transcript to prepare for sentencing (doc. 26). In addition to filing objections to the PSR, the defense filed a motion to withdraw Defendant's plea of guilty to Count Four (docs. 29, 30), which motion was granted after a hearing (docs. 32, 34).

Counsel's objections were to the assessment of Defendant's base offense level, and to the determination that Defendant was not entitled to an acceptance of

responsibility adjustment (doc. 29). The court overruled both objections at sentencing, and sentenced Defendant to concurrent terms of 120 months on Counts One and Two, and a consecutive term of 31 months on Count Three (doc. 49 at 70–71).

Defendant appealed. Counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967) in which he noted that although Defendant believed that he should have received a two-level acceptance of responsibility reduction, counsel believed that this argument could not be made in good faith. (Defendant's appellate brief at 10).[3] The Eleventh Circuit's independent examination of the entire record revealed no arguable issues of merit, and it affirmed Defendant's convictions and sentence (doc. 61).

In the present motion, Defendant separates his claims into four grounds for relief, claiming that both trial and appellate counsel were constitutionally ineffective. The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

### General Legal Standards

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral

---

[3]This brief was not part of the court's electronic record, but was supplied by the Government directly to the chambers of the undersigned.

attack. See 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not

actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. See Nyhuis, 211 F.3d at 1344.

In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  Strickland, 466 U.S. at 689.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.  When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  For the court to focus merely on "outcome

determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. See Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an

evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. Lynn, 365 F.3d at 1239.

Grounds One and Two

Defendant's first and second claims for relief relate to the fact that he did not receive an acceptance of responsibility adjustment. He contends in Ground One that trial counsel was constitutionally ineffective for his failure to argue at sentencing that Defendant was entitled to the acceptance of responsibility adjustment. The record reflects that counsel did raise this issue at sentencing, as Defendant conceded in his reply memorandum.[4] In Ground Two, Defendant contends that appellate counsel was constitutionally ineffective because he did not pursue this issue on appeal, but instead filed an Anders brief.

As an initial matter, the court notes that Defendant bears the burden of showing that he is entitled to a reduction for acceptance of responsibility, and a guilty plea alone does not entitle him to an adjustment as a matter of right. United States v. Williams,

---

[4]Defendant filed his § 2255 motion pro se, but his response was filed through counsel.

408 F.3d 745, 756 (11th Cir. 2005) (citing U.S.S.G. § 3E1.1, comment (n.3)); United States v. Sawyer, 180 F.3d 1319, 1323 (11th Cir. 1999). Although a defendant is not required to volunteer or affirmatively admit relevant conduct beyond the offense of conviction in order to obtain a reduction, a defendant who falsely denies, or frivolously contests relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility. U.S.S.G. § 3E1.1, comment (n.1(A)). The sentencing court found after consideration of all the circumstances in this case that Defendant had not accepted responsibility (doc. 49 at 47–48). The court stated that although Defendant had pleaded guilty, his admission to the offense of conviction had been grudging. More significantly, the court found that Defendant had falsely denied relevant conduct. It specifically concluded that the greater weight of the evidence established that Defendant had falsely denied both that he had discharged the firearm charged in Count One, and that he had participated in the theft of the guns from Mr. Cyrus (*id.* at 47–48).[5]

     Defendant now places great weight on a comment made by the court at the conclusion of the sentencing hearing, that "[there are issues enough in this case about the guidelines that it would be a rational decision to appeal, but I leave that to you" (doc. 49 at 72), and argues that this proves that appellate counsel performed deficiently because no reasonable attorney would have filed an Anders brief rather than presenting the merits of the argument.

---

[5]The court did not re-address at that point the evidence offered by the Government that contradicted Defendant's assertion that he was just being a good Samaritan by trying to return the firearms to their rightful owner (*id.* at 12, 35).

Case Nos.: 4:08cr49/RH/CAS; 4:11cv589/RH/CAS

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal. <u>Evitts v. Lucey</u>, 469 U.S. 387, 396 (1985). To establish ineffective assistance of appellate counsel, a defendant must show that (1) appellate counsel's performance was deficient and (2) but for counsel's deficient performance, he would have prevailed on appeal. <u>Smith v. Robbins</u>, 528 U.S. 259, 285–86 (2000) (*citing* <u>Strickland</u>, 466 U.S. 668). In this case, Defendant cannot meet his burden of showing prejudice. Although counsel filed an <u>Anders</u> brief, therein he presented the issue of the acceptance of responsibility adjustment as one which might "arguably support an appeal," as well as identified applicable legal standards. (Defendant's appellate brief at 10–12). In addition to having the benefit of counsel's presentation, the Eleventh Circuit conducted its own independent review of the entire record, after which it concluded that counsel's assessment of the relative merit of the appeal was correct (doc. 61 at 4). Defendant has not suggested what additional arguments counsel could or should have made on appeal that would have resulted in a different outcome to the proceedings. Therefore, he has not shown prejudice and he is not entitled to relief.

### Ground Three

In Defendant's third claim for relief he alleges that an "extra weapon that the government put on [Defendant] at sentencing, increased his sentence" and that appellate counsel was constitutionally ineffective because he did not raise this argument on direct appeal. Defendant appears to refer to the district court's determination that Defendant's offense conduct included possession of a semiautomatic weapon.

As noted above, numerous stolen firearms were recovered pursuant to a search of Defendant's residence and that of Defendant's neighbor, Patrick Graham. All of the stolen weapons had been taken from the same residence. The parties agreed that one of the weapons, a Century Arms 7.62 x 39 caliber rifle that was recovered from Graham's apartment, was capable of accepting a large capacity magazine (doc. 49 at 15). Because Graham had given conflicting statements to law enforcement about whether Defendant or another individual had given Graham the Century Arms rifle to hold, defense counsel argued that Defendant should not be held accountable for this weapon (*id.* at 30). This would have resulted in a two-level reduction of Defendant's advisory guidelines range (*id.*). The Government argued that the Century Arms rifle was stolen from the same residence and that Defendant's guilty plea to Count Three of the indictment (which listed the Century Arms rifle) was sufficient to support the application of the higher offense level (*id.* at 39, 44–45).

The court stated that its previous finding that Defendant participated in the theft of the firearms also supported a finding that Defendant had a connection with the Century Arms firearm, because that was one of the weapons taken in the theft. It also noted that although the Century Arms weapon was charged in the indictment, Defendant did not admit this particular weapon as part of his plea. Therefore, there was a question as to whether Defendant's plea could be deemed to encompass this particular weapon, and thus support a higher base offense level, without a specific admission (*id.* at 49–50).

After a brief recess, the probation officer provided the court with evidence that one of the firearms that was recovered from Defendant's own residence, a Stag Arms firearm, was capable of accepting high-capacity magazines (doc. 49 at 59).  The probation officer told the court that according to information obtained from the manufacturer's website, the Stag 15 model was capable of accepting a 20-round, 25-round, and 30-round magazine, and that none of the Stag 15 model weapons was incapable of accepting such a high-capacity magazine (*id.* at 61).   The court acknowledged that this information supported its ruling, but noted that even without the new information, it would have found that Defendant was responsible for the high-capacity magazine because Defendant participated in the theft of the Century Arms gun and thus possessed it during the offense of conviction (*id.* at 61–64).

Although Defendant makes much of the inconsistent statements that Graham gave to law enforcement about where he obtained the Century Arms rifle, this does not negate the court's finding that Defendant participated in the theft of the group of firearms including the Century Arms weapon.  It also does not negate the fact that, in accordance with the information provided by the probation officer at sentencing, the Stag Arms rifle could have alone supported the application of the higher base offense level.  Finally, Defendant has offered no contrary legal authority or additional arguments that could have been made before the appellate court.  In sum, Defendant has not established that if counsel had raised this issue on appeal, the outcome of the proceedings would have been different. Robbins, 528 U.S. at 285–86.  He is not entitled to relief on this ground.

Ground Four

Defendant's final claim for relief is that trial and appellate counsel were constitutionally ineffective "for their failure to challenge Reese's unconstitutional Florida Drug Convictions, without such enhancement, Reese's sentence would be lower" (doc. 64 at 6). Defendant offers no additional argument in support of this claim to suggest why his Florida convictions were unconstitutional, and none is apparent from the PSR, which reflects that each drug conviction was counseled (PSR ¶¶ 61, 65). His conclusory, unsupported allegations do not support relief on this claim.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor has he shown that an evidentiary hearing is warranted. Therefore Defendant's motion should be denied in its entirety.

**Certificate of Appealability**

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000)

(explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1. The motion to vacate, set aside, or correct sentence (doc. 64) be **DENIED**.

2. A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 15th day of September, 2014.


/s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).

Case Nos.: 4:08cr49/RH/CAS; 4:11cv589/RH/CAS